### Axe Estate (No. 2)

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Morris Paul Baran,* for petitioner.

*Lawrence J. Richette,* contra.

KLEIN, P. J., November 12, 1965. — Burney Axe is approximately 95 years of age. He was adjudged an incompetent and Broad Street Trust Company was appointed guardian of his estate by decree of Shoyer, J., dated April 21, 1965.

The incompetent has two daughters, Lillian Axe Sporkin and Hilda Axe, and three sons, Burton, Lester and Milton. Lillian, joined in by Hilda, filed a petition in the incompetency proceedings for a citation to show cause why testimony of certain designated witnesses should not be reduced to writing and be filed in perpetuam rei memoriam in contemplation of a contest challenging the will of her father, who is still living.

In this petition, Lillian alleges that her father executed a will on January 9, 1963, at the age of 92 years, and that she has been informed and, therefore, believes and avers that he did not provide for her in his will, although she was a natural object of his affections. She alleges, further, that the will was executed because of undue influence exerted by her three brothers and that she intends to contest the will at her father's death. She, therefore, requests that the testimony of 13 named persons, ranging in age from 65 to 80 years be reduced to writing for filing in perpetuam rei memoriam because their testimony would be crucial to petitioner's case at the time of the will contest, and they might not be available to petitioner when needed.

Burton N. Axe, one of the sons, filed preliminary objections to the petition.

It seems clear that a petition seeking to perpetuate testimony in connection with a contemplated will contest has no place in the administration of the estate of an incompetent. There is nothing before this court

at this time dealing with Burney Axe's will, or any estate he may leave upon his death. Proceedings in which a person is adjudicated an incompetent and a guardian appointed to administer his estate during incompetency have no relationship, directly or indirectly, with an action challenging the validity of his will when he dies. The two are distinctly separate and apart from each other. Under Pennsylvania law the register of wills is a constitutional officer in whom is vested sole and exclusive jurisdiction over the probate of wills. Although appeals from the action of the register are taken to the orphans' court, the court is without authority to interfere with the original jurisdiction delegated to the register. See Martin Estate, 349 Pa. 255 (1944); Rockett Will, 348 Pa. 445 (1944); Simmons Estate, 28 D. & C. 2d 792 (1962).

The preliminary objections begin by stating that Pennsylvania Rules of Civil Procedure 1017(b) (1) are invoked raising a question of jurisdiction. This position is apparently abandoned, as little reference is made to it thereafter. Instead, objectant recites a great many facts which are wholly irrelevant to the issue at hand.

It is obvious that the preliminary objections are improper because they plead both questions of law and fact.

In Doran Estate, 65 D. & C. 227, 228 (1948), our late colleague Judge Ladner (later appointed to the Supreme Court) said:

"The first two of the preliminary objections are badly pleaded. In the McHenry Estate, 65 D. & C. 330, 332, 333, we said:

" 'It has been settled that preliminary objections, like the speaking demurrer of old, must not plead facts, and when they do, such facts must be disregarded: Shaffer et al. v. Shaffer et al., 354 Pa. 517; Pew v. Minor, 216 Pa. 343.' "

See also Kingston Borough v. Kalanosky, 155 Pa. Superior Ct. 424 (1944); Thompson's Estate, 35 D.

& C. 6 (1939), and Long v. Daylor, 43 Dauph. 412 (1937).

We are asked in the preliminary objections to take judicial notice of other litigation instituted by Burney Axe's children against each other. Although we are well aware that these children have engaged in a great deal of unseemly and protracted litigation, we cannot take judicial notice of this fact.

In Steel v. Levy, 282 Pa. 338 (1925), Mr. Justice Simpson said, at page 342:

"At all times the true rule has been, and still is, that 'Courts, including those of probate, cannot in one case take judicial notice of their own records in another and different case, even though the trial judge in fact knows or remembers the contents thereof' (23 Corpus Juris 113), except, perhaps, in a few rare instances having no relevancy here."

See also Naffah v. City Deposit Bank, 339 Pa. 157 (1940) ; R. K. O. Dist. Corp. v. Shook, 108 Pa. Superior Ct. 383 (1933). And this is the rule even though the action be between the same parties: Commonwealth ex rel. v. Ball, 277 Pa. 301, 306 (1923) ; Hall v. Hall, 122 Pa. Superior Ct. 242 (1936). This case is not an exception to this well-settled principle.

It is, therefore, evident that while the daughter's petition should be dismissed because it has no standing in the incompetency proceedings, the preliminary objections should also be dismissed because they are defective.

In an effort to bring some order out of this confusion and, perhaps, to abate in a slight measure the flood of law suits being instituted by these litigious siblings, we will overlook these technical defects and try to reach the heart of this matter. We will, therefore, discuss some of the pertinent principles of law applicable to the perpetuation of testimony generally.

From early days, equity courts were vested with

what has been called assistant or auxiliary jurisdiction which, although exclusive in its nature, is applied in aid of remedial justice in other courts. Bills to perpetuate testimony fall within this category.* The Pennsylvania Rules of Civil Procedure in no way impair the historic jurisdiction of courts of equity to entertain bills for the perpetuation of testimony.

In Goodrich-Amram, Civil Practice, §1532-1, we find the following cogent statement:

"The Rules governing Depositions and Discovery, have expanded the legal remedy for the perpetuation of the testimony of aged, infirm and going witnesses, both at law and in equity to the point that they encompass the entire area of applications for the perpetuation of testimony in pending actions. There is no longer any need for the equitable remedy in this situation.

*"To the contrary, if perpetuation of testimony is required, but suit has not yet been brought, the only remedy is in equity."* (Italics suplied).

The orphans' court is a court of limited jurisdiction, exercising only such power as is given by statute, expressly or by necessary implication: Watson's Estate, 314 Pa. 179 (1934). Although the legislature, in section 304 of the Orphans' Court Act of August 10, 1951, P. L. 1163, reenacted the provision that the orphans' court shall have all legal and equitable powers required for, or incidental to, the exercise of its jurisdiction, the court does not now, and never did have full and complete equity jurisdiction: Mains' Estate, 322 Pa. 243 (1936).

It is true that, once the orphans' court assumes rightful jurisdiction of a subject, it will decide all matters necessary to enable it to make a full and final determination of the whole controversy, although in so doing it may adjudicate questions which, if standing alone,

---

* See Actions to Perpetuate Testimony, 8 Standard Pa. Prac. 369.

would not warrant the assumption of such jurisdiction: Goldstein Estate, 29 D. & C. 536 (1937). See also Fisher Estate, 26 D. & C. 2d 351 (1962), and the cases cited therein at page 359, et seq. However, Burney Axe is still alive. Hence, there is nothing before us at this time concerning his estate as a decedent to which our equity jurisdiction could attach.

We, therefore, conclude that the orphans' court is without authority to entertain the petition which has been filed to preserve testimony, such jurisdiction lying exclusively with a court having plenary equitable powers.

Let us assume for the sake of discussion, and only for this purpose, that the orphans' court did have jurisdiction in the matter. We would nevertheless be compelled to dismiss Lillian Sporkin's petition.

In Story's Equity Jurisprudence (14 ed.), vol. 3, p. 542, in discussing bills to perpetuate testimony, he states:

"It follows from the very nature and objects of such bills that the plaintiff who is desirous of perpetuating evidence must by his bill show that he has some interest in the subject-matter, and that it may be endangered if the testimony in support of it is lost. . . . But if the interest be a present vested one not liable to such an objection, it is perfectly immaterial how minute that interest may be, or how distant the possibility of its coming into actual possession and enjoyment may be. A present interest, the enjoyment of which may depend upon the most remote and improbable contingency, is nevertheless a present estate, although with reference to chances it may be worth little or nothing. *On the other hand, although the contingency may be ever so proximate and valuable, yet if the party has not by virtue of that an estate (as in the case of the heir of a lunatic), Courts of Equity will not interfere to perpetuate evidence touching it.*" (Italics supplied.)

A bill to perpetuate testimony will not lie if the person seeking it is attempting to protect a mere possibility or expectancy. He must have a present right, either vested or contingent: Hanford v. Ewen, 79 Ill. App. 327 (1898). See Sackvill v. Ayleworth, 1 Vern. 105 (1682), in which a demurrer was sustained to a bill to perpetuate the testimony of witnesses to a lunatic's will, in his lifetime, where the will was made before his lunacy.

Lillian Axe Sporkin has no right or title in her father's estate as long as he is alive. A will is ambulatory and, in fact, not a will until the testator's death. We repeat the quotation from Bryden's Estate, 211 Pa. 633, 636 (1905), used by Judge Shoyer in Axe Estate, 34 D. & C. 2d 625, 635 (1964), which was a proceeding by the same petitioner, Lillian Axe Sporkin, to have her father adjudicated an incompetent:

"[W]e must not lose sight of the basic principle involved . . . that a man may do what he pleases with his personal estate during his life. He may even beggar himself . . . if he chooses to commit such an act of folly. When he dies, and then only, do the rights of his heirs attach to his estate."

Counsel for the petitioner places great reliance upon Baker v. Weiss, 43 D. & C. 707 (1941), in which the court permitted the perpetuation of testimony bearing upon the legitimacy of a child who would have been entitled to participate in the benefits of three trusts, which were being administered by trustees, if her legitimacy could have been established. One of the trusts had been set up under the will of a person who was deceased and the other two by inter vivos deeds. This decision certainly has no bearing on the present case because there the rights of the parties had been fixed by the trust instruments when the trusts were created. Moreover, in that case the bill was not filed in the orphans' court but in the equity division of the court of common pleas.

We will conclude with the observation that, even if petitioner had the right to seek the perpetuation of the testimony of the witnesses she has designated in her petition, which right she does not have, and even if this court had jurisdiction over the subject matter of her petition, which jurisdiction we do not have, we would not, under the circumstances of this case, grant the prayer of her petition. The persons whose testimony Lillian Axe Sporkin is seeking to perpetuate are all from 15 to 30 years younger than her father, and it is exceedingly unlikely that this aged, sick man will outlive them.

We, therefore, enter the following

DECREE

And now, November 12, 1965, the preliminary objections are sustained.